UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| MARIA GREEN as Independent Administrator of the Estate of EILEEN JONES, Deceased,<br>       Plaintiff,<br><br>       v.<br><br>HORSESHOE HAMMOND, LLC d/b/a HORSESHOE CASINO HAMMOND,<br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CAUSE NO.: 2:18-CV-378-JEM |

**OPINION AND ORDER**

This matter is before the Court on Plaintiff's Daubert Motion to Exclude Testimony of Podiatrist Michael S. Nirenberg, D.P.M. [DE 54], and Motion of Horseshoe Hammond, LLC to Bar Opinions, Reports and Testimony of Dr. Chad Jacobs [DE 55], both filed on February 1, 2021. Both parties seek to exclude testimony of the other's expert witness. Defendant filed a response to Plaintiff's motion on February 15, 2021, Plaintiff filed a response on March 4, 2021, and both parties filed replies on June 10, 2021.

**I.    Background**

On October 11, 2018, Plaintiff Eileen Jones filed a Complaint alleging that Defendant Horseshoe is liable for injuries she suffered when she slipped and fell in their casino, including the ultimate amputation of her leg. Defendant has stipulated to liability, but asserts that not all of Ms. Jones's claimed injuries were a result of the incident. Ms. Jones died on April 19, 2020, and on September 11, 2020, Maria Green, as Independent Administrator of the Estate of Eileen Jones, was substituted as party plaintiff.

Plaintiff designated Dr. Jacobs, a vascular surgeon, as an expert witness. He opined that it was more likely than not that Ms. Jones's fall was the causative event that ultimately led to her

amputation. Defendant designated podiatrist Dr. Nirenberg as an expert witness. He opined on the progression of infection on the diabetic patient and concluded that the accident did not cause Ms. Jones's ulceration, infection, and amputation. Both parties move to exclude the testimony of the other's expert.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## II. Analysis

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the standards set forth by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *See Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007). Rule 702 provides that courts should admit expert testimony if

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702 (emphasis added). The Court may also consider whether the expert's theory has been tested and subjected to peer review and publication, the potential error rate of the method at issue, and whether the theory is generally accepted in the scientific community. *Daubert*, 509 U.S. at 593-95.

### A. Dr. Jacobs

Defendant moves to exclude the opinions of Dr. Jacobs about the cause of Ms. Jones's right heel ulceration and right leg amputation. Defendant does not dispute Dr. Jacobs's general

2

qualifications, but argues that his specialized knowledge is not completely appropriate to this case and that his causation opinion is not based on reliable principles and methods. In particular, Defendant argues that Dr. Jacobs did not explain why he excluded other identified potential causes of a diabetic ulceration and therefore has not demonstrated a reliable methodology to support his causation opinion. Plaintiff argues that just because Dr. Jacobs did not use the same methodologies as Defendant's expert, that does not mean that Dr. Jacobs's methods were incorrect. Plaintiff argues that Dr. Jacobs considered alternative causes of Ms. Jones's ulceration and amputation and explained why he concluded that they were unlikely.

Plaintiff also argues that it is inappropriate for one expert to comment on the credibility of another expert. As described below, any affidavit or testimony that was not disclosed prior to the close of discovery was not considered by the Court in consideration of these motions. The Court further notes that at trial, "expert testimony must not be allowed to cross over the line of helpfulness and to invade the quintessential jury function of determining the credibility of witnesses." *S.E.C. v. Lipson*, 46 F. Supp. 2d 758, 763 (N.D. Ill. 1998).

Dr. Jacobs is a vascular surgeon who concluded that "[b]ased on [his] review of the provided medical records, it appears more likely than not that the fall sustained by Ms. Jones at the Horseshoe Casino on 7/15/2014 was the causative event that ultimately led to her right below-knee amputation." Def. Ex. E. p. 3 [DE 55-5]. He is a specialist in vascular surgery, particularly peripheral vascular disease and issues related to the lower extremities, and has treated many diabetic patients with foot wounds. His testimony is based on his review of Ms. Jones's medical records and his specialized scientific knowledge. In particular, he opined regarding his experience with patients with diabetes and obesity.

3

Many of Defendant's arguments are, in essence, that Dr. Jacobs did not use the same methodologies as its expert. Beyond general disputes as to the methodologies, Defendant argues that Dr. Jacobs disregarded evidence inconsistent with his opinion and did not exclude all other possible causes of a wound on Ms. Jones's foot. However, "an expert need not testify with complete certainty about the cause of an injury; rather he may testify that one factor could have been a contributing factor to a given outcome," and the possibility of another ultimate cause "is properly left for exploration on cross-examination." *Gayton v. McCoy*, 593 F.3d 610, 619 (7th Cir. 2010) (citing *Walker v. Soo Line R. Co.*, 208 F.3d 581, 587–88 (7th Cir. 2000)). Defendant's arguments that its expert used a better methodology and that he discounted other potential causes are issues of credibility for the jury to consider, not reasons to exclude his testimony in its entirety. "That two different experts reach opposing conclusions from the same information does not render their opinions inadmissible." *Walker*, 208 F. 3d at 589. Defendant may cross-examine Dr. Jacobs regarding the basis of his conclusions and his methodology and may present the methodologies of its own expert, to the extent that they are not excluded, but the Court finds that Dr. Jacobs's opinions are not be precluded under Rule 702.

B.    <u>Dr. Nirenberg</u>

Plaintiff moves to exclude the testimony of Dr. Nirenberg. She argues that portions of his testimony address issues of vascular surgery that are outside his expertise as a podiatrist or are not based on data. Defendant argues that Dr. Nirenberg developed a reliable methodology based on review of Ms. Jones's medical records, including her x-rays, and examination of her gait as seen on the surveillance tapes on the day of the incident, and that Plaintiff's arguments go to the weight of their expert's opinions rather than their admissibility. To the extent that Plaintiff is challenging Dr

4

Nirenberg's qualifications to testify at all about the medical issues in this case, the challenge is too broad: a vascular surgeon is not the only type of expert qualified to opine on Ms. Jones's medical issues, and Dr. Nirenberg has demonstrated a reliable methodology on which to base most of his opinions. However, Plaintiff also argues that specific areas of testimony are not based on facts and data.

Plaintiff argues that Dr. Nirenberg's testimony that Ms. Jones suffered a separate, undocumented incident or injury should be excluded because it is not based on facts or data. Defendant argues that Dr. Nirenberg reviewed Ms. Jones's medical records to determine what he believed to be the cause of her amputation and concluded that she suffered other conditions that led to the infection and ultimate amputation. It appears that there are inconsistencies in the medical records or at least that the two medical experts interpreted some entries differently. Their explanations can be addressed on cross-examination, and the Court will not make a determination at this point of which interpretation is correct; "[i]t is within the province of the jury to determine which of two contradictory expert statements is deserving of credit." *Spesco, Inc. v. Gen. Elec. Co.*, 719 F.2d 233, 237-38 (7th Cir. 1983); *see also Gicla v. United States*, 572 F.3d 407, 414 (7th Cir. 2009) ("Although those professionals were commenting largely on the same body of evidence relating to Gicla's course of treatment, they came to directly contradictory conclusions. . . . So the case also presented a classic battle of the experts. And in that respect . . , the case called upon the factfinder to determine what weight and credibility to give the testimony of each expert and physician."); *Wipf v. Kowalski*, 519 F.3d 380, 385 (7th Cir. 2008) ("Especially in a case of dueling experts, as this one was, it is left to the trier of fact . . . to decide how to weigh the competing expert testimony."). However, to the extent that Defendant intends to put on expert testimony that Ms.

5

Jones definitely suffered another injury or had another incident that does not otherwise appear in her medical records, that is not based on sufficient facts and the record is excluded. Dr. Nirenberg is permitted to discuss his interpretation of Ms. Jones's medical records and his assessment of the progression that led to Ms. Jones's amputation, subject to cross examination and without testifying about the existence of another injury that does not appear in the medical records.

Likewise, Plaintiff moves to exclude Dr. Nirenberg's assertion that there was no evidence of injury to Ms. Jones's right foot or ankle at the time of the incident as contradicted by medical records reflecting injury. Defendant argues that Dr. Nirenberg was "accounti[ng] for discrepancies in Ms. Jones' medical histories" when he reached that conclusion. As above, cross-examination about why each medical expert interpreted the records the way they did is permissible, and Dr. Nierenberg may explain why he discounted the references to right foot or ankle injuries in reaching his conclusions, but the statement that "[a]t the time of the accident on 7/15/2014 there is no evidence of injury to the right foot or ankle" and similar assertions are excluded as unsupported.

Plaintiff also moves to exclude testimony from Dr. Nirenberg regarding damage or lack thereof to Ms. Jones's shoes. His opinion does not include any scientific method or basis for his conclusions about the effect of Ms. Jones's fall on her footwear, and that testimony is excluded.

Plaintiff argues that it requested the materials relied on by Dr. Nirenberg in producing his expert report, but that Defendant did not provide them in the course of discovery. Plaintiff argues that these materials should be excluded and any opinions based on the unproduced materials should be barred. In support of its Daubert motion, Defendant provided an additional affidavit of Dr. Nirenberg, and Plaintiff argues that it should be stricken from the record, with any information included in the affidavit that is not also in the previously disclosed opinions barred from presentation

at trial.

Federal Rule of Civil Procedure 26(a)(2) requires parties to disclose, at the time set by the Court, the identity of any person who may be used at trial to present evidence under Rules of Evidence 702, 703, or 705, and if a "party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). A trial court has broad discretion to decide whether a failure to timely disclose an expert witness is justified or is harmless error. *Miksis v. Howard*, 106 F.3d 754, 760 (7th Cir. 1997). In deciding whether an untimely disclosure of an expert is harmless, the Court evaluates "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

Defendant asserts that it did not previously disclose some of the information and materials Dr. Nirenberg relied upon because it was intending to disclose them prior to Dr. Nirenberg's deposition. It argues that the affidavit is consistent with Dr. Nirenberg's expert report and is offered in lieu of deposition testimony since he was not deposed, and that it has now provided all requested information in his possession. Plaintiff argues that Defendant should not be permitted to rely upon the supplemental disclosures or affidavit provided after the deadline for disclosures expired on August 17, 2020, and that the failure of Defendant to produce them prior to the deadline is not substantially justified. Defendant argues that the affidavits do not change or contradict the original report, but address specific criticisms Defendant asserts would otherwise have been addressed at a

deposition. Defendant also argues that Plaintiff has not suffered any harm from the late disclosures and will be fully able to cross-examine Dr. Nirenberg on the affidavits. Plaintiff argues that Defendant should not be awarded for the gamesmanship of withholding opinions in the expectation of a deposition.

In this case, although trial itself will not be disrupted by the late disclosure of the affidavits and other information relied upon by Defendant's expert, it did prejudice Plaintiff's ability to fully and adequately prepare her motion to exclude in accordance with the trial schedule set by the Court, and Defendant's failure to disclose appears to be at best due to carelessness about deadlines, but just as likely can be ascribed to willful disregard of the Court's scheduling order and its responsibilities in accordance with the Rules. Because Defendant is correct that Plaintiff can still fully cross-examine Dr. Nirenberg and thus limit some of the prejudice, his testimony will not be fully excluded for Defendant's failure to timely supplement its expert disclosures, and because the request to strike the affidavit was not part of a fully-supported motion to strike, the Court will not strike it from the docket at this time. However, the affidavits presented after the close of discovery were not considered by the Court in determination of the instant motions and any information not provided in the timely report is excluded from trial. To the extent that there are other specific concerns about what particular evidence is or is not admissible in accordance with this Order, Plaintiff may file a motion to strike or motion to exclude specific evidence on or before July 16, 2021.

### III. Conclusion

Accordingly, the Court hereby **GRANTS in part** Plaintiff's Daubert Motion to Exclude Testimony of Podiatrist Michael S. Nirenberg, D.P.M. [DE 54] as described herein and **DENIES** the Motion of Horseshoe Hammond, LLC to Bar Opinions, Reports and Testimony of Dr. Chad

Jacobs [DE 55].

SO ORDERED this 7th day of July, 2021.

                                                    s/ John E. Martin
                                                    MAGISTRATE JUDGE JOHN E. MARTIN
                                                    UNITED STATES DISTRICT COURT

cc:     All counsel of record